Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| JOSÉ LUIS NAVARRO REYNA<br><br>Recurrente<br><br>v.<br><br>JUNTA DE DIRECTORES CONDOMINIO BAHÍA COURT<br><br>Recurrido | KLRA202400521 | *Revisión* Administrativa procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm.: C-SAN-2023-0015926<br><br>Sobre: Condominio (Ley Núm. 104 de 25 de junio de 1958, según enmendada) |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Rodríguez Casillas, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de diciembre de 2024.

Comparece por derecho propio el Sr. José Luis Navarro Reyna ("señor Navarro Reyna" o "recurrente") mediante el recurso de revisión judicial para que revoquemos una *Resolución* emitida el 29 de julio de 2024, por el Departamento de Asuntos del Consumidor ("DACo").[1] En esta, el DACo declaró No Ha Lugar la querella incoada por la parte recurrente sobre una impugnación de deuda y acción de cobro.

Adelantamos que, por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

**-I-**

El **29 de agosto de 2023**, el señor Navarro Reyna presentó una querella ante el DACo contra la Junta de Directores del Condominio Bahía Court ("Bahía Court" o "recurrida"). En resumen,

---

[1] Notificada el 31 de julio de 2024.

alegó que Bahía Court le había imputado una deuda inexistente correspondiente a unos atrasos con la cuota de mantenimiento, por lo cual, arguyó que dicha deuda era contraria a varias leyes.

El **17 de julio de 2024**, el DACo celebró una Vista Administrativa mediante videoconferencia. A la misma comparecieron el señor Navarro Reyna, la Sra. Carla Fontanes Bunker (Presidenta de la Junta de Directores del Condominio Bahía Court) y el representante legal de Bahía Court.

El **29 de julio de 2024**, el DACo emitió una *Resolución* en la cual denegó la querella e hizo las siguientes determinaciones de hechos:[2]

1. La parte querellante, José Luis Navarro Reyna, es titular del apartamento Once (11) del Condominio Bahía Court, en virtud de la Escritura Núm. 668 sobre Compraventa, otorgada el 15 de julio de 2002, en San Juan, Puerto Rico, ante el Notario, Ricardo J. Ramos González.

2. El Condominio Bahía Court está sometido al Régimen de Propiedad Horizontal.

3. En la vista administrativa, las partes estipularon la siguiente evidencia de la parte querellante:
   - Exhibit #1 - Carta del 17 de mayo de 1999 dirigida a todos los condómines de Bahía Court.
   - Exhibit 32- Copia del Reglamento de Administración para el Condominio Bahía Court (Exhibit A).
   - Exhibit #3 - Copia de Escritura de Compraventa de apartamento de parte querellante.
   - Exhibit #4- Carta del 25 de noviembre de 2002 a los condómines Bahía Court.
   - Exhibit #5- Carta del 28 de febrero de 2022 dirigida a Carla Fontanes.
   - Exhibit #6- Minuta de reunión celebrada el 19 de abril de 2022.
   - Exhibit #7- Carta del 22 de abril de 2022 a todos los titulares y/o residentes.
   - Exhibit #8 - Convocatoria Asamblea Ordinaria del 23 de septiembre de 2022 y relación de notificaciones a la asamblea.
   - Exhibit #9 - Copia de Acta de Asamblea Ordinaria del 24 de octubre de 2022, hoja de asistencia Asamblea Ordinaria y Presupuesto Sugerido 2022.
   - Exhibit #10 - Carta del 16 de agosto de 2023 dirigida a José L. Navarro y Carmen Pilar Resto López.

---

[2] Véase, Apéndice del Recurrente, págs. 14-25.

4. Adicional, las partes estipularon la siguiente evidencia documental de la parte querellada:
   - Exhibit #1 - Copia de Acta de Asamblea Ordinaria del 24 de octubre de 2022 y hoja de asistencia a asamblea.
   - Exhibit #2- Presupuesto Sugerido 2022.
   - Exhibit #3-. Carta del 7 de marzo de 2023 dirigida al Sr. José Navarro.
   - Exhibit #4 - Recibo de envío de carta del 7 de marzo de 2023 por correo certificado.
   - Exhibit #5- Carta del 5 de abril de 2023 dirigida al Sr. José Navarro.
   - Exhibit #6 - Recibo de envío de carta del 5 de abril de 2023 por correo certificado.
   - Exhibit #7- Carta del 14 de julio de 2023 dirigida al Sr. José Navarro.
   - Exhibit #8 - Recibo de envío de carta del 14 de julio de 2023 por correo certificado.
   - Exhibit #9- Carta del 26 de abril de 2023 dirigida al Lcdo. Blanco Dalmau.

5. La parte querellante alegó que durante los últimos veintidós (22) años nunca se ha realizado una asamblea conforme a la Ley hasta que finalmente, en el mes de octubre de 2022 se llevó a cabo una Asamblea Ordinaria, la cual según su testimonio en la vista administrativa, no le fue notificada.

6. El 24 de octubre de 2022, el Consejo de Titulares celebró una Asamblea Ordinaria, para atender varios asuntos relacionados con el Condominio Bahía Court. La parte querellante no asistió a la Asamblea Ordinaria del 24 de octubre de 2022. No obstante, de la hoja de registro de asistencia de la mencionada asamblea, compareció Jessica Fernández Rosado, sin *proxy* alguno, quien se identificó como inquilina del apartamento cuya parte querellante es titular. (Exhibit #9- Parte Querellante).

7. En o alrededor del 31 de enero de 2023, se celebró una reunión entre la parte querellante y la Presidenta de la Junta de Directores del Condominio Bahía Court, Carla Fontanes. En la mencionada reunión se atendió el asunto relacionado con una deuda pendiente del titular por concepto de cuotas de mantenimiento en atraso. La parte querellante alegó que la deuda es inexistente.

8. Para la fecha del 7 de marzo de 2023, la parte querellada, por conducto de su representación legal, le informó a la parte querellante, mediante carta enviada por correo certificado con acuse de recibo sobre la existencia de una deuda por concepto de cuotas. de mantenimiento en atraso, por la cantidad de $10,167.12. En la mencionada notificación se le apercibió a la parte querellante sobre la alternativa de acogerse a un plan de pago, así como del derecho de la parte querellada de presentar la acción de cobro en el Tribunal. (Exhibits #3 y #4- Parte Querellada).

9. Con fecha del 5 de abril de 2023, la parte querellada, por conducto de su representación legal, le cursó una segunda misiva a la parte querellante, mediante correo certificado con

acuse de recibo, para reiterar la deuda existente por concepto de cuotas de mantenimiento En dicha carta, se le indicó a la parte querellante que, de tener alguna prueba de que la cantidad adeudada no es la correcta, la parte querellada no tendría problema en celebrar una reunión entre las partes y verificar la prueba de los pagos realizados por la parte querellante (Exhibits #5 y #6 -Parte Querellada).

10. Con fecha del 14 de julio de 2023, la parte querellante recibió una notificación de la parte querellada, por conducto de su representación legal, enviada por correo certificado con acuse de recibo en relación a una oferta para que la parte querellante se acogiera a un plan de pagos, con un descuento del 25%. (Exhibits #7 y #8 – Parte Querellada).

11. Posteriormente, la parte querellante recibió una notificación con fecha del 16 de agosto de 2023 de la Presidenta de la Junta de Directores del Condominio Bahía Court, Carla Fontanes, en donde se le apercibió de una posible suspensión de servicios de utilidades, con efectividad al 30 de agosto de 2023, de no satisfacer el pago de la deuda por concepto de cuota de mantenimiento en atraso. (Exhibit #10 - Parte Querellante).

12. Inconforme con la notificación sobre la suspensión de servicios de agua potable y energía eléctrica, el 29 de agosto de 2023, la parte querellante presentó la querella de epígrafe, a los fines para impugnar una alegada deuda por concepto de deudas por concepto de mantenimiento en atraso

13. El 26 de septiembre de 2023, la parte querellada presentó una *Moción de Desestimación* en la que alegó que la querella ante nuestra consideración no presentaba una reclamación que justificara la concesión de un remedio, por inmeritoria, por falta de jurisdicción o por cualquier otro fundamento que en derecho procediera.

14. El 3 de junio de 2024, la parte querellante presentó una *Moción* a los fines de hacer cumplir una Orden de este Departamento, en la que se opone a la *Moción de Desestimación* presentada por la parte querellada.

15. El 6 de junio de 2O24 la parte querellada presentó una *Réplica a Moción en Cumplimiento de Orden para Mostrar Causa,* como reacción a la moción de la parte querellante, con fecha del 3 de junio de 2024.

16. En la vista administrativa, la parte querellante manifestó no rehusarse a pagar la cuota de mantenimiento, sin embargo, alegó que tiene que ser conforme la Ley, por lo que no está dispuesto a pagar si no hay gastos o pagar por un presupuesto que debe ser para gastos prospectivos, esto, debido a que en la Asamblea Ordinaria celebrada en octubre del 2022 quedó aprobado el presupuesto para el año 2022.

17. En el contrainterrogatorio, la parte querellante admitió haber recibido las cartas de cobro de la parte querellada, por concepto de cuotas de mantenimiento en atrasos.

18. En el contrainterrogatorio, la parte querellante admitió que en la reunión celebrada para el mes de enero de 2023, con la Presidenta de la Junta de Directores del Condominio Bahía Court, aceptó tener una deuda con el condominio y que en la mencionada reunión evaluó documentos provistos por la parte querellada en relación a la existencia de la deuda por concepto de cuotas de mantenimiento en atraso.

19. En el contrainterrogatorio, la parte querellante admitió que, luego de examinar los documentos provistos en la reunión de enero de 2023, presentó una oferta transaccional para finiquitar o liquidar la deuda existente, la cual no fue aceptada por la Sra. Carla Fontanes, en representación de la Junta de Directores del Condominio Bahía Court.

20. En el contrainterrogatorio, la parte querellante admitió no haber aceptado la oferta de plan de pago propuesta por la parte querellada para atender el asunto de la deuda existente con el Consejo de Titulares del Condominio Bahía Court.

21. En el contrainterrogatorio, la parte querellante manifestó que las cartas de cobro recibidas por la parte querellada constituían una amenaza, razón por la cual decidió acudir al Departamento, a presentar la querella de epígrafe.

22. En el contrainterrogatorio, la parte querellante admitió no haber pagado la cuota de mantenimiento por la cantidad de $52.00 mensuales, ni la póliza de seguro correspondiente al apartamento de la parte querellante.

23. Según el testimonio de la testigo, Carla Fontanes Bunker, expresó ser titular residente en el Condominio Bahía Court desde el año 1999 y que desde ese entonces se establecieron las cuotas de mantenimiento, conservación y preservación del condominio, las cuales no han sido actualizadas al presente.

24. Según el testimonio de la testigo, Carla Fontanes Bunker, desde el 1999 al presente han existido Juntas de Directores y que recibió notificaciones sobre el pago de las cuotas de mantenimiento, las cuales podían ser trimestrales o anuales.

25. La testigo Carla Fontanes Bunker alegó presidir la Junta de Directores del Condominio Babia Court desde el 24 de octubre de 2022 al presente.

26. La testigo Carla Fontanes Bunker alegó que la parte querellante fue notificada de la Asamblea Ordinaria del 24 de octubre de 2022, mediante entrega de la convocatoria a la inquilina de la parte querellante, Jessica Fernández. Alegó que en la Asamblea Ordinaria se seleccionó a la nueva Junta de Directores y el presupuesto del condominio. Además, alegó que en el proceso de transición de las Juntas de Directores, se le hizo entrega de varias carpetas, cuyos documentos incluían copias de las cartas cursadas a los titulares sobre las deudas pendientes con el condominio, incluyendo las notificaciones a la parte querellante.

27. Según el testimonio de la testigo Carla Fontanes Bunker, a todos los titulares con deudas existentes se les ofreció la alternativa

de acogerse a un plan de pago o saldar la deuda. Alegó que de ocho (8) titulares con deuda, incluyendo la parte querellante, siete (7) aceptaron la oferta de plan de pago o saldo de deuda, con excepción de la parte querellante, quien se negó a pagar la deuda o acogerse al plan de pago propuesto.

28. La testigo Carla Fontanes Bunker alegó haberse reunido con la parte querellante para la fecha del 31 de enero de 2023; en donde la parte querellante había admitido sobre la obligación del pago de cuota de mantenimiento y sobre la existencia de una deuda acumulada. Adicional, la testigo Fontanes alegó que la parte querellante ofreció pagar la cantidad de $2,000.00 como oferta transaccional para el saldo de la deuda existente, la que fue denegada. De otro lado, en cuanto al asunto del presupuesto, le aclaró a la parte querellante que las cuotas de mantenimiento se mantenían inalteradas desde el 1999 y que el presupuestase hizo a base de gastos estimados.

29. La testigo Carla Fontanes Bunker alegó que la parte querellante en ningún momento le ha cuestionado sobre la forma en que se constituyó la Junta de Directores, ni presentó objeción alguna sobre la composición de esta Junta de Directores.

30. La parte querellante admitió que no participó de la Asamblea Ordinaria del 24 de octubre de 2022 y que sí compareció su inquilina, quien no le avisó de la mencionada asamblea, a pesar de esta haber recibido la convocatoria.

31. La parte querellante no presentó evidencia de los pagos realizados por concepto de cuotas de mantenimiento ni del pago de la deuda existente con el Consejo de Titulares del Condominio Bahía Court.

32. La parte querellante no presentó evidencia alguna para controvertir o refutar la deuda acumulada con el Consejo de Titulares del Condominio Bahía Court, por concepto de cuotas de mantenimiento en atraso.

33. La parte querellada nunca le ha suspendido a la parte querellante los servicios de agua y/o electricidad, aun cuando existe una deuda por concepto de cuotas de mantenimiento en exceso del término establecido en la Ley.[3]

Luego de aquilatar la prueba testifical y documental, el DACo concluyó que no le asistía la razón al señor Navarro Reyna. Primeramente, la agencia señaló que la prueba documental presentada por el recurrente no logró contrarrestar las alegaciones de Bahía Court. Especialmente cuando el señor Navarro Reyna admitió que en efecto, le adeuda dinero a Bahía Court por concepto

---

[3] *Íd.*, a la págs. 14-19.

de cuotas de mantenimiento vencidas. Por todo esto, el DACo declaró No Ha Lugar la querella del recurrente.

Inconforme, el señor Navarro Reyna presentó un recurso de revisión judicial ante este foro apelativo. Cabe destacar que en el presente recurso el recurrente no expuso error alguno conforme a la Regla 59 inciso (C)(1)(e) del Reglamento del Tribunal de Apelaciones.[4] Al no incluir señalamientos de error, el señor Navarro Reyna tampoco discutió las disposiciones de ley ni jurisprudencia aplicables a su reclamo en contravención a la Regla 59 inciso (C)(1)(f) del Reglamento del Tribunal de Apelaciones.[5] No obstante, nos solicitó que "*testifiquemos*" la inexistencia de la deuda por cuotas de mantenimiento atrasadas.

Por su parte, Bahía Court compareció mediante escrito en oposición y nos solicitó denegar de plano la revisión judicial presentada por el recurrente.

**-II-**

**-A-**

Es norma reiterada en nuestro ordenamiento que los tribunales apelativos han de conceder gran deferencia a las decisiones de los organismos administrativos, por razón de la experiencia y pericia de las agencias respecto a las facultades que se les ha delegado.[6] Nuestro más Alto Foro ha establecido que las decisiones de las agencias administrativas gozan de una presunción de regularidad y corrección.[7] Por esto, es necesario que quien desee impugnar dichas decisiones presente evidencia suficiente para derrotar la presunción de validez de la que gozan las mismas y no descanse en meras alegaciones.[8]

---

[4] 4 LPRA Ap. XXII-B, R. 59.
[5] *Íd.*
[6] *Batista, Nobbe v. Jta. Directores,* 185 DPR 206, 215 (2012).
[7] *González Segarra et al. v. CFSE,* 188 DPR 252, 276 (2013).
[8] *Pacheco v. Estancias,* 160 DPR 409, 431 (2003).

Conforme lo ha interpretado nuestro Tribunal Supremo, la revisión judicial de este tipo de decisiones se debe limitar a determinar si la actuación de la agencia fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción.[9] La revisión judicial de una determinación administrativa se circunscribe a determinar si: **(1)** el remedio concedido por la agencia fue apropiado; **(2)** las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo, y **(3)** las conclusiones de derecho fueron correctas.[10]

La sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU) dispone que las determinaciones de hecho realizadas por una agencia administrativa serán sostenidas por el tribunal revisor si se encuentran respaldadas por evidencia sustancial que surja del expediente administrativo al ser considerado en su totalidad.[11] Desde luego, por **evidencia sustancial** se entiende "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[12] Es por ello, que la parte afectada deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo **no estuvo basada en evidencia sustancial**.[13] Así, nuestra función apelativa se circunscribe a considerar si la determinación de la agencia es razonable, ya que lo

---

[9] *Mun. de San Juan v. CRIM*, 178 DPR 163, 175 (2010).
[10] *Pacheco v. Estancias, supra*, pág. 431.
[11] Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA sec. 9675; *Pacheco v. Estancias, supra*, pág. 432.
[12] *Íd.*
[13] *Otero v. Toyota*, 163 DPR 716, 728 (2005).

que se persigue es evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo.[14]

Por otro lado, y en cuanto a las conclusiones de derecho, la referida sección 4.5 de la LPAU nos faculta a revisarlas en toda su extensión.[15] No obstante, ello no implica que tenemos la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia.[16] Es decir, cuando un tribunal revisor llega a un resultado distinto, este debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública **o en la apreciación de la prueba**.[17] En otras palabras, también se ha dicho que, al revisar la determinación de la agencia, el criterio a aplicarse no debe ser si la determinación administrativa es la más razonable o la mejor, según el entender del tribunal revisor. En su lugar, el parámetro que gobierna estas situaciones es **si la interpretación del ente administrativo de sus reglamentos y de las leyes que le corresponde aplicar es razonable**.[18] Por lo tanto, como tribunal revisor solo podemos sustituir el criterio de la agencia por el nuestro, **cuando no pueda encontrar una base racional para explicar la determinación administrativa**.[19]

**-B-**

El estado de derecho vigente en materia de condominios es la Ley Núm. 129 de 16 de agosto de 2020 (Ley Núm. 129-2020), conocida como la *Ley de Condominios de Puerto Rico*. Esta ley tiene el propósito de *"viabilizar la propiedad individual sobre un apartamiento, que forma parte de un edificio o inmueble sometido al*

---

[14] *Íd.*
[15] 3 LPRA sec. 9675.
[16] *Otero v. Toyota, supra*, pág. 729.
[17] *Íd.*
[18] *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 616 (2006).
[19] *Íd.*

*régimen de propiedad horizontal*.[20]

Sabido es que la administración de todo inmueble constituido bajo el régimen de propiedad horizontal se rige por lo dispuesto en la Ley de Condominios y el Reglamento del inmueble.[21] En particular, el Artículo 48 de la Ley de Condominios dispone que el Consejo de Titulares constituye la autoridad suprema sobre la administración del inmueble.[22] En ese sentido, *"las resoluciones y acuerdos, adoptados en asambleas debidamente convocadas y constituidas, serán de ineludible cumplimiento por todos y cada uno de los titulares, ocupantes o residentes y demás personas que se relacionen con el condominio"*.[23]

Por su parte, la Junta de Directores es el órgano ejecutivo de la comunidad de titulares.[24] Entre sus facultades y deberes se encuentran:

> *a) Atender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen y en especial lo relativo a las cosas y elementos de uso común y los servicios generales, y hacer a estos efectos las oportunas advertencias y apercibimientos a los titulares.*
> *[...]*
> *d) Cobrar a los titulares las cantidades con que deben contribuir a los gastos comunes y realizar los demás cobros y pagos que sean necesarios, extendiendo los correspondientes recibos y cheques.*
> *[...]*
> *l) Establecer un plan de pago para aquellos titulares que demuestren no tener la capacidad económica para cumplir con los plazos de cuotas, cuotas especiales, derramas, y/o multas con pago vencido de sesenta (60) días o más.[25]*

Cónsono con lo anterior, la Ley de Condominios establece la obligación de todo titular de un apartamiento de contribuir con los gastos comunes para el adecuado sostenimiento del inmueble.[26] Al respecto, el Artículo 59 del estatuto dispone en su parte pertinente que:

> ***Los titulares de los apartamentos están obligados a***

---

[20] 31 LPRA sec. 1921a.
[21] 31 LPRA sec. 1293.
[22] 31 LPRA sec. 1293b.
[23] *Íd.*
[24] 31 LPRA sec. 1922y.
[25] *Íd.*
[26] *D.A.Co. v. Cond. Castillo del Mar*, 174 DPR 967, 973 (2008); Art. 39 de la Ley de Condominios, 31 LPRA sec. 1293c.

*contribuir proporcionalmente a los gastos para la administración, conservación y reparación de los elementos comunes generales del inmueble y, en su caso, de los elementos comunes limitados, así como a cuantos más fueren legítimamente acordados.*

*[...]*

*Ningún titular podrá librarse de contribuir a tales gastos por renuncia al uso o disfrute de los elementos comunes, ni por abandono del apartamento que le pertenezca, ni por haber incoado una reclamación administrativa o judicial contra el Consejo de Titulares o la Junta de Directores por asuntos relacionados con la administración o el mantenimiento de las áreas comunes, salvo que el tribunal o foro competente así la autorice. Se entenderá que las acciones de cobro, como lo es el envío de una factura o estado de cuenta a un titular, interrumpirán cualquier término prescriptivo aplicable a cuotas de mantenimiento, derramas, multas, seguro comunal o deudas con el Consejo de Titulares.*

*[...]*

***La deuda de un titular por concepto de cuotas de mantenimiento para gastos comunes se le podrá reclamar judicialmente luego de ser requerido de pago mediante correo certificado con acuse de recibo y de éste no cumplir el pago en el plazo de vencimiento.***

*[...]*

*La Junta de Directores podrá ordenar la suspensión del servicio de agua potable, electricidad, gas, teléfono, así como los servicios de transmisión de voz, video y data, y/o cualquier otro servicio similar, cuando el suministro de éstos llega por medio de instalaciones que constituyen elementos comunes generales del inmueble, a aquellos titulares que adeuden dos (2) o más plazos de cuotas, cuotas especiales, derramas, multas con pago vencido de sesenta (60) días o más, o alguna prima vencida del seguro comunal por cualquiera de los apartamentos de los que sea titular. No se suspenderá ningún servicio, a menos que medie una notificación al titular por los medios establecidos en esta Ley, la cual deberá realizarse con no menos de quince (15) días de anticipación.[27]*

De lo anterior se desprende, que la Ley de Condominios reconoce que el pago diligente de <u>las cuotas de mantenimiento es fundamental para la sana administración y el funcionamiento adecuado de los elementos comunes</u>.[28]

**-III-**

En resumen, el señor Navarro Reyna solicita nuestra intervención para que revoquemos la determinación del DACo y que, en consecuencia, declaremos inexistente la deuda correspondiente a la cuota de mantenimiento. Sin embargo, el expediente ante nuestra consideración nos invita a confirmar la *Resolución* recurrida. Veamos.

---

[27] 31 LPRA sec. 1923d.
[28] *D.A.Co. v. Cond. Castillo del Mar*, pág. 975.

En primer lugar, el señor Navarro Reyna no probó los hechos alegados en la Vistas Administrativa ante el DACo. Al contrario, su testimonio tuvo el efecto de dar por probados los hechos alegados por Bahía Court. Esto es, reconoció tener una deuda con Bahía Court correspondiente a la cuota de mantenimiento. Por otro lado, y como bien señaló el DACo, el recurrente no presentó evidencia que impugnara el récord de la agencia. Finalmente, y como mencionáramos anteriormente, el recurso de revisión judicial del señor Navarro Reyna no cumple con las exigencias prescritas en el Reglamento del Tribunal de Apelaciones.

En conclusión, no creemos prudente ni necesario sustituir el criterio del DACo por el nuestro. Sobre todo, cuando del expediente ante esta Curia no surge que la determinación del DACo fuese arbitraria, ilegal, caprichosa o de naturaleza tan irrazonable que constituyera un abuso de discreción. Recordemos que el parámetro que gobierna la revisión judicial es *si la interpretación del ente administrativo de sus reglamentos y de las leyes que le corresponde aplicar es razonable.*[29] Somos del criterio que la interpretación del DACo y su apreciación de la evidencia fue razonable.

-**IV-**

Por los fundamentos antes expresados, se confirma la *Resolución* recurrida.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[29] *Hernández, Álvarez v. Centro Unido, supra.*