ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| ELIEZER SANTANA BÁEZ | | *REVISIÓN ADMINISTRATIVA* procedente de Administración de Corrección |
|---|---|---|
| Recurrente | **KLRA202500165** | |
| v. | | Caso Núm.: B7-22233 |
| DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN | | Sobre: Programa de Dispensa |
| Recurrido | | |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 19 de mayo de 2025.

Comparece ante este foro el Sr. Eliezer Santana Báez (señor Santana o "el recurrente"), por derecho propio y en *forma pauperis* y nos solicita que revisemos dos (2) decisiones intituladas *Respuesta de la Planilla de Información Necesaria para Evaluar Candidatos para el Programa* *Pase Extendido con Monitoreo Electrónico* y *Respuesta de la Planilla de Información Necesaria para Evaluar Candidatos para el Programa* *Religiosos y Seculares*, notificadas el 14 de febrero de 2025, por la Coordinadora de Programas y Desvíos del Departamento de Corrección y Rehabilitación (DCR o "parte recurrida"). Mediante los referidos dictámenes, el DCR le denegó el acceso tanto al Programa de Pase Extendido con Monitoreo Electrónico, como al Programa Religioso y Secular.

Por los fundamentos que expondremos a continuación, **CONFIRMAMOS** las decisiones recurridas.

### I.

Según surge del expediente, el señor Santana se encuentra confinado en la Institución Correccional

Bayamón 501 del DCR. Fue sentenciado el 13 de diciembre de 2004 a cumplir una pena de 119 años por la comisión de los delitos de Asesinato en Primer Grado, Tentativa de Asesinato, Artículos 5.04 y 5.15 de la Ley de Armas y Agresión Agravada. Para el 19 de septiembre de 2024, cumplió 20 años y 4 meses. El mínimo de la sentencia lo cumpliría el 22 de abril de 2029 y el máximo el 1 de noviembre de 2112. Asimismo, surge que desde el 27 de agosto de 2024, el recurrente fue reclasificado a custodia mínima.[1]

El 25 de septiembre de 2024, fue referido a la División de Programas de Desvíos.[2] El 13 de febrero de 2025, la Coordinadora del Programa emitió una *Respuesta de la Planilla de Información Necesaria para Evaluar Candidatos para el Programa Pase Extendido con Monitoreo Electrónico* y la *Respuesta de la Planilla de Información Necesaria para Evaluar Candidatos para el Programa Religiosos y Seculares*.[3] Mediante estas, le denegó al señor Santana ser elegible a los programas. Como fundamento explicó lo siguiente:

> Se evalúa conforme a la fecha de los hechos y se determina lo siguiente:
>
> No cualifica en virtud de lo dispuesto en la Ley 49 del 26 de mayo de 1995. (Delito Excluyente-Asesinato en Primer Grado).
>
> (Desde la fecha de los hechos al presente bajo el Plan de Reorganización del DCR #2 del 21 de noviembre de 2011 en su Artículo #16, según enmendado, se excluye del beneficio de Programas de Desvío el delito de Asesinato en Primer Grado y conforme a lo dispuesto en el Reglamento del Programa Integral de Reinserción Comunitaria Núm.

---

[1] *Informe para Evaluación del Plan Institucional*, págs. 10-13 del apéndice en oposición al recurso.

[2] *Acuerdos del Comité de Clasificación y Tratamiento*, pág. 17 del apéndice en oposición al recurso.

[3] *Respuesta de la Planilla de Información Necesaria para Evaluar Candidatos para el Programa Pase Extendido con Monitoreo Electrónico[3]* y *Respuesta de la Planilla de Información Necesaria para Evaluar Candidatos para el Programa Religiosos y Seculares*, págs. 1-9 del apéndice en oposición al recurso.

9488 del 9 de agosto de 2023 en el Art. VIII. Exclusiones Inciso 1-d).

No cualifica en virtud de la Ley 404 del 11 de septiembre de 2000, con vigencia del 1 de marzo de 2001. (El Art. 5.04 de la Ley de Armas lo excluye de beneficiarse de Programas de Desvío)

En desacuerdo, según incluyó el recurrente en el recurso de epígrafe, el 18 de febrero de 2025, presentó una *Petición de Reconsideración*.[4] En esencia, alegó que cumplió con la *Sentencia* impuesta sobre el delito de la Ley de Armas y que ha cumplido con más del 20% del delito de Asesinato en Primer Grado, por lo tanto, cumple con los requisitos para ser elegible a los programas.

El DCR señaló que, aún cuando el recurrente alegó presentar una solicitud de reconsideración, ésta nunca fue recibida por la Oficina de Programas de Desvío Comunitario.[5] Sin embargo, no solicitan la desestimación del recurso.[6]

El 14 de marzo de 2025,[7] el señor Santana presentó el recurso de epígrafe y señaló la comisión del siguiente error:

Erró el DCR por medio de la división de programas al disponer que no cualifico para una dispensa de programa religioso o seculares cuando ya me la habían dado y cuando la ley de Armas en mi caso ya fue extinguida y éstos tienen conocimiento de ello.

El 26 de marzo de 2025, emitimos una *Resolución* concediéndole a la parte recurrida el término dispuesto en el Reglamento de este Foro para que presentara su alegato.

---

[4] Véase, *Petición de Reconsideración* en el apéndice del recurso.
[5] *Certificación*, pág. 25 del apéndice en oposición al recurso.
[6] Véase, "*footnote*" núm. 8, pág. 3 del *Escrito en Cumplimiento de Orden* del DCR.
[7] El recurso fue recibido en la Secretaría de este Foro el 18 de marzo de 2025, según consta del ponche. No obstante, la fecha del depósito en el correo ordinario, según el ponche es del 14 de marzo de 2025.

Luego de solicitar una prórroga, el 8 de mayo de 2025, el DCR presentó su *Escrito en Cumplimiento de Orden*.

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso.

## II.

### -A-

Es norma reiterada en nuestro ordenamiento que los tribunales apelativos han de conceder gran deferencia a las decisiones de los organismos administrativos, por razón de la experiencia y pericia de las agencias respecto a las facultades que se les ha delegado. *Batista, Nobbe v. Jta. Directores,* 185 DPR 206, 215 (2012). Nuestro Tribunal Supremo ha establecido que las decisiones de las agencias administrativas gozan de una presunción de regularidad y corrección. *González Segarra et al. v. CFSE,* 188 DPR 252, 276 (2013). Por esto, es necesario que quien desee impugnar dichas decisiones debe presentar suficiente evidencia para derrotar la presunción de validez de la que gozan las mismas y no descanse en meras alegaciones. *Pacheco v. Estancias,* 160 DPR 409, 431 (2003).

Conforme lo ha interpretado nuestro más Alto Foro, la revisión judicial en este tipo de decisiones se debe limitar a determinar si la actuación de la agencia fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción. *Mun. de San Juan v. CRIM,* 178 DPR 163, 175 (2010).

### -B-

La Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1, dispone que será política pública del Estado reglamentar

las instituciones penales para que sirvan a sus propósitos en forma efectiva, y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social. *López Borges v. Adm. Corrección*, 185 DPR 603, 619 (2012). A la luz de esta disposición constitucional, en nuestra jurisdicción se han aprobado leyes que promueven la política pública de rehabilitación de los delincuentes que, a su vez, salvaguardan la seguridad de la comunidad.

Así surgió la Ley Núm. 116 del 22 de julio de 1974 (Ley Núm. 116), conocida como *Ley Orgánica de la Administración de Corrección*, que fue aprobada con el propósito de crear la Administración de Corrección y facultarla para administrar un sistema correccional integrado e implantar enfoques para estructurar formas de tratamiento individualizado y programas de rehabilitación en la comunidad. 4 LPRA ant. sec. 1111. La Ley Núm. 49 del 26 de mayo de 1995 (Ley Núm. 49) enmendó la precitada Ley Núm. 116, a los efectos de añadir el Artículo 10-A, que leía:

> Artículo 10-A.- No serán elegibles para participar en los programas de desvío o tratamiento y rehabilitación establecidos por la Administración de conformidad con las facultades que le confiere esta Ley, ni en el Programa de Hogares de Adaptación Social, las siguientes personas:
>
> a. Toda persona convicta que esté cumpliendo sentencia por los siguientes delitos:
> (1) asesinato; violación; incesto; sodomía o actos lascivos o impúdicos cuando la víctima fuera menor de catorce (14) años;
>
> (2) violaciones a la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como "Ley de Sustancias Controladas de

Puerto Rico", excepto las violaciones al Artículo 404 de dicha Ley;

(3) violaciones a la Ley Núm. 134 de 28 de junio de 1969, según enmendada, conocida como "Ley de Explosivos de Puerto Rico".

b. Toda persona convicta por la comisión de cualquier delito grave que no sea de los incluidos en el inciso a de este Artículo, hasta que haya cumplido por lo menos un diez (10) por ciento de la sentencia de reclusión en una institución penal, excluyendo toda clase de bonificaciones, y se determine por el Administrador de Corrección que no representa una amenaza para la comunidad.

c. Toda persona convicta por delito grave a la cual se le haya hecho una determinación de reincidencia agravada o reincidencia habitual de conformidad a las disposiciones de la Ley Núm. 115 de 22 de julio de 1974, según enmendada, conocida como "Código Penal del Estado Libre Asociado de Puerto Rico".

Se podrá excluir de la aplicación de las disposiciones de este Artículo a los confinados bajo la custodia de la Administración que confronten problemas de salud con prognosis de vida corta y con condiciones fisiológicas limitantes. Para que proceda esta exclusión deberá mediar una recomendación del Programa de Salud Correccional acompañada de una certificación médica del confinado con la prognosis de vida. Además los confinados no deben de constituir peligro para la comunidad.

A su vez, el Artículo 4 de la Ley Núm. 49 expresaba que "las disposiciones de esta Ley aplicarán a todos los convictos cumpliendo sentencia bajo la custodia y supervisión de la Administración de Corrección". 4 LPRA ant. sec. 1112n.

Sim embargo, mediante la Orden Administrativa Núm. AC-2011-07, el DCR estableció que, a partir del 17 de marzo de 2011, cada evaluación para conceder un pase a

algún miembro de la población correccional sería realizada basándose en el reglamento vigente al momento de cometerse los hechos que configuran el delito por el cual el confinado fue sentenciado.

El Reglamento Núm. 5065 de 4 de mayo de 1994 estableció el procedimiento para el programa de supervisión electrónica. A pesar de que la Ley Núm. 49 específicamente establecía que sería inelegible para participar de programas de desvío o tratamiento y rehabilitación la persona convicta que esté cumpliendo sentencia por delito de asesinato, el Reglamento Núm. 5065 no excluía a los convictos de asesinato en primer grado del privilegio de supervisión electrónica.

Posteriormente, fue aprobado el Reglamento Núm. 6041 de 27 de octubre de 1999, el cual excluyó el privilegio de supervisión electrónica a los convictos por asesinato en primer grado. Esto continuó así con el *Reglamento para la Implementación del Programa Integral de Reinserción Comunitaria*, Núm. 7640 de 19 de diciembre de 2008, el cual diversificó los programas de tratamiento y rehabilitación de los confinados, para incluir programas de desvío religiosos, Hogares CREA y de adaptación social. Dicho Reglamento Núm. 7640 expresamente excluía de participar del programa de reinserción comunitaria a las personas convictas de asesinato en primer grado.

-C-

El 21 de noviembre de 2011, fue aprobado el *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011*. 3 LPRA Ap. XVIII. El cual, derogó expresamente la *Ley de la Administración de Corrección*. El *Plan de Reorganización* creó al

Departamento de Corrección y Rehabilitación como el organismo gubernamental responsable de implementar la política pública relacionada al sistema correccional y al proceso de rehabilitación de adultos y de menores, así como de la custodia de todos los ofensores y transgresores del sistema de justicia criminal del país. Art. 4 del Plan de Reorganización, *supra*.

El *Plan de Reorganización* le confirió al Secretario del DCR, la facultad y el deber de desarrollar programas y servicios que permitieran y viabilizaran la rehabilitación de la población correccional, facilitando su reintegración a la libre comunidad. Art. 7 (a) del Plan de Reorganización, *supra*. En específico, el Artículo 16 del Plan de Reorganización, *supra*, dispone que:

> El Secretario establecerá mediante reglamento los objetivos de cada programa de desvío, cómo habrán de operar, los criterios y condiciones para la concesión de dicho privilegio, así como también los criterios, condiciones y procesos que habrá de seguirse para la revocación del privilegio y administrará los programas de desvío donde las personas convictas puedan cumplir parte de su sentencia fuera de la institución correccional. La opinión de la víctima habrá de tomarse en consideración como uno de los criterios para conceder el privilegio de ubicar a un miembro de la población correccional en un programa de desvío.
>
> No serán elegibles para participar en los programas de desvío establecidos por el Departamento las siguientes personas:
>
> **(a) Toda persona convicta que esté cumpliendo sentencia por los siguientes delitos:**
>
> > (1) Producción, posesión y distribución de pornografía y la utilización de un menor para la pornografía infantil;
> >
> > (2) violaciones a las secs. 2101 et seq. del Título 24, conocidas como "Ley de Sustancias Controladas de Puerto Rico",

excepto las violaciones a la sec. 2404 del Título 24;

(3) violaciones a las secs. 561 et seq. del Título 25, conocidas como la "Ley de Explosivos de Puerto Rico";

**(4) toda persona convicta por delito grave de primer grado.**[8]

(b) Toda persona convicta por la comisión de cualquier delito grave que no sea de los incluidos en el inciso (a) de esta sección, hasta que haya cumplido por lo menos un veinte (20) por ciento de la sentencia de reclusión en una institución correccional, excluyendo toda clase de bonificaciones y se determine por el Secretario que no representa una amenaza para la comunidad;

(c) toda persona convicta por delito grave a la cual se le haya hecho una determinación de reincidencia agravada o reincidencia habitual de conformidad a las disposiciones del Código Penal de Puerto Rico de 2004, y

(d) toda persona convicta mientras no haya satisfecho la pena especial dispuesta en el Artículo 67 del Código Penal de Puerto Rico de 2004, antes citada.

Se podrá excluir de la aplicación de las disposiciones de este Artículo a los miembros de la población correccional bajo la custodia del Departamento que confronten problemas de salud con prognosis de vida corta y con condiciones fisiológicas limitantes. Para que proceda esta exclusión deberá mediar una recomendación del Departamento acompañada de una certificación médica sobre el miembro de la población correccional con la prognosis de vida. Además, los miembros de la población correccional no deben representar peligro para la comunidad.

Nada de lo dispuesto en este Artículo menoscaba el deber del Secretario de proveer y establecer programas de tratamiento y rehabilitación conforme a lo dispuesto en este Plan.[9] (Énfasis nuestro).

---

[8] El Código Penal de 2004 introdujo varios cambios al régimen de penas en nuestro ordenamiento. Entre otros asuntos, su Art. 16 clasificó los delitos graves en cuatro tipos, a saber: grave de primer grado, grave de segundo grado, grave de tercer grado y grave de cuarto grado; y su Art. 66 dispuso las penas correspondientes según la clasificación de los delitos. Véase, 33 LPRA ant. secs. 4644 y 4694.

[9] El Artículo 87 del Plan de Reorganización, *supra*, dispone que "[t]odos los reglamentos que gobiernan la operación de las funciones y programas de las diferentes agencias componentes del Departamento, que estén vigentes a la fecha en que tenga efectividad la transferencia y que sean compatibles con este plan, continuarán en vigor hasta que sean sustituidos, enmendados o derogados por el

De otra parte, a tenor con las facultades concedidas por el Plan de Reorganización, *supra*, el DCR promulgó el *Reglamento del Programa Integral de Reinserción Comunitaria*, Reglamento Núm. 9242 del 11 de diciembre de 2020 (Reglamento Núm. 9242). El Artículo VII de dicho cuerpo reglamentario establecía los criterios de elegibilidad específicos para los programas comunitarios de base religiosa y de Hogares CREA. De la misma forma, el Artículo VIII desglosaba las exclusiones a dichos beneficios. En específico, su inciso (1)(c) disponía que no serían elegibles para participar de los programas de desvío establecidos por el DCR toda persona convicta por delito grave de segundo grado o de un delito de mayor severidad.

Sin embargo, el Reglamento Núm. 9242 quedó derogado por el *Reglamento del Programa Integral de Reinserción Comunitaria,* Reglamento Núm. 9488 de 9 de agosto de 2023 (Reglamento Núm. 9488), efectivo el 7 de septiembre de 2023. En armonía con la Ley Núm. 79-2022, el Artículo VIII del Reglamento Núm. 9488 esboza las siguientes exclusiones para participar en los programas de desvío establecidos por el DCR:

> **No serán elegibles para participar en los programas de desvío establecidos por el Departamento las siguientes personas:**
>
> **1. Toda persona convicta que esté cumpliendo sentencia par los siguientes delitos:**
>
>> a. Producción, posesión y distribución de pornografía y la utilización de un menor para la pornografía infantil.
>>
>> b. Violaciones a la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como Ley de Sustancias Controladas de

---

Secretario, según sea el caso, conforme a la reestructuración de funciones que se establecen en este Plan y a las demás leyes que le sean aplicables".

Puerto Rico, excepto las violaciones al Artículo 404 de dicha Ley.

c. Violaciones a la Ley Núm. 134 de 28 de junio de 1969, según enmendada, conocida como la Ley de Explosivos de Puerto Rico.

d. **Toda persona convicta por delito grave de primer grado.** (Énfasis nuestro).

[…].

### III.

En el caso de autos, el señor Santana alega que erró el DCR al denegarle su participación en los programas de pase extendido con monitoreo electrónico, y religiosos y seculares, puesto que, la *Sentencia* que tenía por Ley de Armas ya fue extinguida, además que cumplió con el 20% de su pena por el delito de Asesinato en Primer Grado.

Por su parte, el DCR reitera que el recurrente cumple una sentencia por la comisión del delito de Asesinato en Primer Grado. Sostienen que, según el Plan de Reorganización de 2011, así como la Reglamentación aplicable se excluye del beneficio a todo aquel sentenciado del delito de asesinato en primer grado, ello, independientemente del término que haya cumplido en los delitos.

Conforme al derecho antes expuesto, el Plan de Reorganización, *supra*, ha sido enmendado en varias ocasiones y se han aprobado y derogado múltiples reglamentos, sin embargo, estos han excluido a los convictos por asesinato en primer grado de su participación en dichos programas. Actualmente, el Artículo VIII del Reglamento Núm. 9488 expresamente excluye de los programas de desvío a "[t]oda persona convicta por delito grave de primer grado". Igualmente, el Artículo 16 del Plan de Reorganización, *supra*, según

enmendado, expresamente excluye de los mencionados programas a las personas convictas por delito grave de primer grado.

En el presente caso, el señor Santana fue sentenciado el 14 de diciembre de 2004 por el delito de Asesinato en Primer Grado, entre otros delitos establecidos en el Código Penal de 1974, por hechos ocurridos el 16 de abril de 2004. Como consecuencia, el señor Santana no cumple con los requisitos para ser elegible al Programa de Pase Extendido con Monitoreo Electrónico ni al Programa Religiosos y Seculares toda vez que su sentencia por el delito de Asesinato en Primer Grado constituye una exclusión para participar de tales programas de desvío, conforme al Reglamento Núm. 9488 y al Plan de Reorganización, *supra*.

Así pues, coincidimos con las determinaciones del DCR de denegarle al recurrente los referidos programas de desvío, no porque haya o no cumplido el 20% de la pena, sino debido a que no cumple con los requisitos reglamentarios.

Por lo tanto, no vemos razón alguna por la que no debamos otorgar deferencia a las decisiones administrativas recurridas.

### IV.

Por los fundamentos antes expuestos, **CONFIRMAMOS** las determinaciones recurridas.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones