ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| **SUPER ASPHALT, PAVEMENT CORP.,**<br><br>Recurrente<br><br>v.<br><br>**JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE GUAYNABO**<br><br>Recurrido<br><br><br>**PUERTO RICO ASPHALT**<br><br>Licitadora Agraciada<br><br>**BERRÍOS CONTRACTOR & ASPHALT, INC.; MANOR CONTRACTORS, CORP; BELLA SOFÍA CONSTRACTORS, INC.; ANÍBAL DÍAZ CONSTRUCTION, INC.; REYES CONSTRUCTOR GRUP, INC.; DB ASPHALT & RECYCLING, LLC.; PROFESSIONAL ASPHALT, LLC.,**<br><br>Otras Licitadoras | TA2025RA00233 | **REVISIÓN** procedente de la Junta de Subastas del Municipio Autónomo de Guaynabo<br><br><br>Caso Núm: Subasta Municipal **26-F-034**<br><br><br>Sobre: Adjudicación de Subasta Municipal 26-F-034 Adquisición de Hormigón Asfáltico, Entregado, Regado y Compactado |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Cintrón Cintrón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de octubre de 2025.

Comparece ante nosotros, Super Asphalt Pavement, Corp. (Super Asphalt) e impugna la adjudicación de la subasta número 26-F-034 sobre adquisición de hormigón asfáltico, entregado, regado y compactado, notificada el 3 de septiembre de 2025, por la Junta de Subastas del Municipio Autónomo de Guaynabo (Junta de Subastas). Por medio de la mencionada determinación, se adjudicó

la *buena pro* de la subasta a Puerto Rico Asphalt, LLC. (Puerto Rico Asphalt).

Por los fundamentos que expresaremos a continuación, se confirma la decisión recurrida.

**I.**

El 20 de mayo de 2025, el Municipio Autónomo de Guaynabo (Municipio) publicó un *Aviso de Subastas*, entre las que se encontraba la núm. 26-F-034 para la adquisición de hormigón asfáltico, entregado, regado y compactado.

Los siguientes licitadores sometieron sus respectivas propuestas: Puerto Rico Asphalt LLC; Berríos Contractor & Asphalt, Inc.; Manor Contractors, Corp.; Aníbal Díaz Construction, Inc.; Super Asphalt Pavement, Corp.; Reyes Contractor Group, Inc.; DB Asphalt & Recycling, LLC. y Professional Asphalt LLC.[1]

Para la determinación y consideración de la subasta, la Junta tomó conocimiento oficial del análisis que sometió la directora del Departamento de Obras Públicas, ingeniera Madeline Ortiz Morales, persona responsable de este servicio y/o con el "*expertise*" en la evaluación de las subastas de este tipo. Esta realizó el siguiente resumen de las propuestas:

| Licitador | Propuesta | Propuesta (aplicación del parámetro de preferencia) |
|---|---|---|
| Puerto Rico Asphalt LLC | $133.00 | $113.05 |
| Berríos Contractor & Asphalt Inc. | $150.00 | N/A |

---

[1] La Junta de Subastas rechazó la oferta de Bella Sofía Contractors, Inc. por no presentar el *Addendum* No. 1 y porque la Resolución Corporativa presentada solo autorizaba al oficial corporativo a realizar gestiones relacionadas con la compra de un apartamento y no gestiones sobre la presente subasta, según requerido en los pliegos de esta.

| | | |
|---|---|---|
| Manor Contractors Corp. | $135.00 | N/A |
| Aníbal Díaz Construction Inc. | $298.00 | N/A |
| Super Asphalt Pavement Corp. | $132.00 | $112.20 |
| Reyes Contractor Group Inc. | $215.00 | N/A |
| DB Asphalt & Recycling LLC. | $138.00 | $117.30 |
| Professional Asphalt LLC. | $133.00 | $113.05 |

La directora del Departamento de Obras Públicas expresó que, si bien Super Asphalt resultó ser el menor postor con una oferta de $132.00 por tonelada, en la evaluación administrativa y técnica identificó situaciones previas con esta compañía que afectaban su conveniencia para el contrato de la subasta de referencia. En específico, fundamentó su recomendación para no adjudicarle la *buena pro* en que:

> Durante el período 2022-2023, Super Asphalt Pavement Corp. presentó múltiples incumplimientos en el contrato de la adquisición de hormigón asfáltico tipo S-1, B-1 y V-B, entregado, regado y compactado, con el Municipio Autónomo de Guaynabo, incluyendo:
>
> - Incumplimiento en los tiempos de entrega estipulados en los contratos.
>
> - Deficiencias en el servicio y en la coordinación de los trabajos programados.
>
> - Atrasos significativos en proyectos, lo que afectó la ejecución de obras municipales y provocó que se optara por no adjudicarle la misma subasta, aun siendo menor postor, tan reciente como el año pasado.
>
> Estas situaciones adversas quedaron debidamente documentadas en los expedientes contractuales del

Municipio y representan un riesgo operacional para los proyectos contemplados en la presente subasta.

En la evaluación de segundo postor, la ingeniera Ortiz Morales identificó un empate en precio entre Puerto Rico Asphalt y Professional Asphalt, ambos con una oferta de $133.00 por tonelada y con el parámetro de preferencia. Sin embargo, recomendó la adjudicación a Puerto Rico Asphalt, en consideración a su experiencia reciente en el Municipio Autónomo de Guaynabo, su desempeño eficiente y su capacidad de cumplimiento.

Posteriormente, en una reunión celebrada el 16 de julio de 2025, la Junta determinó lo siguiente con relación a Super Asphalt:

Super Asphalt Pavement, Corp. en su relación contractual con el municipio ha exhibido un historial de incumplimiento con los tiempos de entrega estipulados; deficiencias en el servicio y en la coordinación de los trabajos programados y atrasos significativos en los proyectos, todo ello afectando la ejecución de las obras municipales. Véase, Expediente de Subasta 24-F-010A, Adquisición de Hormigón Asfáltico.

El historial de incumplimiento de Super Asphalt Pavement, Corp. también fue objeto de un proceso de Solicitud de Revisión Judicial ante el Tribunal de Apelaciones, Super Asphalt Pavement, Corp. v. Junta de Subastas del Municipio Autónomo de Guaynabo, KLRA202300367. Mediante Sentencia de 27 de septiembre de 2023, el Tribunal de Apelaciones confirmó la resolución administrativa de la Junta de Subastas adjudicando la buena pro al segundo menor postor y no al menor postor, Super Asphalt Pavement, Corp., debido al historial de incumplimiento de este último y, por consiguiente, no cumplir con los requisitos para ser un licitador responsable.

Por cuanto, la Junta determina que Super Asphalt Pavement, Corp. no es un licitador o postor responsable.

Asimismo, la Junta tomó conocimiento de las ofertas idénticas de Puerto Rico Asphalt y Professional Asphalt. No obstante, resaltó la experiencia contractual, el historial de cumplimiento y la calidad de los servicios ofrecidos por Puerto Rico Asphalt e hizo constar que ello garantizaba la continuidad de los proyectos municipales y servía mejor el interés público.

Así, luego de analizar las propuestas presentadas, la Junta de Subastas acogió la recomendación de la directora del Departamento de Obras Públicas y, mediante *Notificación de Adjudicación* de 3 de septiembre de 2025, determinó adjudicar la subasta en cuestión a Puerto Rico Asphalt a $133.00 por tonelada.

En desacuerdo con la decisión emitida, Super Asphalt recurre ante nos y en su escrito plantea que el ente administrativo cometió el siguiente error:

> [A]l invalidar y denegar la licitación de Super Asphalt a base de experiencias negativas que sucedieron bajo dueños y administradores anteriores.

El 6 de octubre de 2025, el Municipio Autónomo de Guaynabo y su Junta de Subastas presentaron su alegato. El 17 de octubre de 2025, Puerto Rico Asphalt hizo lo propio.

Procedemos a resolver.

**II.**

En nuestra jurisdicción, la contratación gubernamental de todo tipo de servicios está revestida del más alto interés público debido a su impacto sobre el erario. En estos asuntos se persigue fomentar la inversión adecuada, responsable y eficiente de los recursos del Estado. *Sonell Transit Service, LLC v. Junta de Subastas del Municipio de Toa Baja, et al.*, 2025 TSPR 85, 216 DPR ___ (2025); Mun. *Aguada v. W Const. y Recovery Finance*, 214 DPR 432 (2024); *St. James Sec. v. AEE*, 213 DPR 366, 377 (2023), citando a *SLG Ortiz-Mateo v. ELA*, 211 DPR 772 (2023) y otros.

La subasta tradicional y el requerimiento de propuestas (*Request for Proposal o RFP*) son métodos mediante los cuales, tanto el gobierno central, como el municipal, adquieren bienes y servicios para así proteger el erario y garantizar que se realicen sus funciones administrativas responsablemente. *St. James Sec. v. AEE,* supra. A través de ambos mecanismos, se procuran conseguir "los precios más económicos; evitar el favoritismo, la corrupción, el dispendio,

la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento". *Caribbean Communications v. Pol. de P.R.,* 176 DPR 978, 994 (2009). En la medida que exista pureza en estos procedimientos, los entes estatales y municipales promoverán la libre competencia entre los postores. *Íd.*

En el caso de los municipios, la subasta tradicional y *Request for Proposal,* realizados por la Junta de Subastas, se encuentran gobernados por la Ley Núm. 107 del 14 de agosto de 2020, conocida como el *Código Municipal de Puerto Rico,* 21 LPRA sec. 7001 *et seq.,* según enmendada, (Ley Núm. 107-2020)[2] y el *Reglamento para la Administración Municipal de 2016* (Reglamento Núm. 8873)[3]. *PR Eco Park et al. v. Mun. de Yauco,* 202 DPR 525 (2019). El derecho de revisión judicial que poseen los licitadores se encuentra de igual manera regulado por dichos cuerpos normativos y la jurisprudencia interpretativa.

En lo concerniente a los criterios de adjudicación, el Artículo 2.040(a) de la Ley Núm. 107-2020, 21 LPRA sec. 7216, dispone que, cuando se trate de compras, construcción o suministros de servicios, la Junta de Subastas:

> [...]

> [A]djudicará a favor del postor razonable más bajo. En el caso de ventas o arrendamiento de bienes muebles e inmuebles adjudicará a favor del postor más alto. La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto

---

[2] Antes Ley Núm. 81-1991, según enmendada, conocida como la *Ley de Municipios Autónomos de Puerto Rico,* 21 LPRA sec. 4001 *et seq.*

[3] Reglamento Núm. 8873 del 19 de diciembre de 2016 de la Oficina del Comisionado de Asuntos Municipales, conocido como Reglamento para la Administración Municipal de 2016.

En la presente causa, la Junta de Subastas también tomó en consideración lo dispuesto en el *Reglamento de Adquisición de Bienes y Servicios No Profesionales del Municipio Autónomo de Guaynabo,* aprobado mediante la Ordenanza Núm. 32, Serie 2024-2025, de 4 de abril de 2025.

o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta.

**La Junta podrá adjudicar a un postor que no sea necesariamente el más bajo o el más alto, según sea el caso, si con ello se beneficia el interés público. En este caso, la Junta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación.** (Énfasis nuestro).

[...]

Por otro lado, el Reglamento Núm. 8873 esboza que toda compra de materiales, suministros, comestibles, servicios, medicinas, equipo y todo contrato para cualquier construcción, obra o mejora pública se efectuará mediante competencia al postor responsable cuya oferta sea más ventajosa al Gobierno Municipal, considerando el precio y las especificaciones, así como los términos y estipulaciones requeridas. Capítulo VIII, Parte I, Sección 1.

De otro lado, la Sección 5 de la Parte II del Reglamento Núm. 8873 describe a un licitador responsable como uno que:

(1) Tiene recursos financieros adecuados para cumplir su obligación o la habilidad de obtener tales recursos.

(2) Es capaz de cumplir con los términos requeridos o propuestos de entrega, según estipulados o requeridos.

(3) Tiene un historial de cumplimiento satisfactorio.

(4) Tiene un historial satisfactorio de integridad y ética comercial.

(5) Tiene la organización, experiencia, contabilidad y controles operacionales y destrezas técnicas necesarias para cumplir sus obligaciones.

(6) Tiene equipo técnico y facilidades necesarias, o la habilidad de obtener tal equipo y facilidades.

(7) Está de otra forma cualificado y sea elegible para recibir una adjudicación de conformidad con las leyes y reglamentos aplicables.

(8) Cualquier otro requerimiento impuesto por el municipio para considerarlo como "licitador responsable".

En armonía con lo anterior, la Sección 11 de la Parte II del Capítulo VIII expone que, en la subastas de adquisición, construcción y suministros de servicios no profesionales, **la adjudicación se hará a favor del licitador respaldado por un buen historial de capacidad y cumplimiento y que**: (a) cumpla con los

requisitos y condiciones de los pliegos de especificaciones y **(b) sea la más baja en precio o que, aunque no sea la más baja en precio, la calidad y/o garantías ofrecidas superan las demás ofertas o se justifique el beneficio de interés público de esa adjudicación.** (Énfasis nuestro).

Por otra parte, la Sección 12(4)(b) de la Parte II del Capítulo VIII explica que:

> Cuando dos o más ofertas sean idénticas en precios, especificaciones y demás condiciones requeridas, la Junta tomará en consideración la experiencia que haya obtenido con licitadores en contratos que le hayan sido otorgados anteriormente o la calidad ofrecida y las garantías y términos de entrega. También podrá anunciar una nueva subasta donde solo participen los licitadores cuyas ofertas sean idénticas o podrá adjudicar la misma por sorteo, en presencia de los licitadores concernidos.

### III.

En el caso ante nuestra consideración, la Junta de Subastas no le otorgó la *buena pro* al postor más bajo, Super Asphalt. En cambio, se la adjudicó a Puerto Rico Asphalt, luego de justipreciar y tomar conocimiento de la oferta idéntica presentada por Professional Asphalt. La Junta justificó su determinación en que el historial de cumplimiento y calidad de los servicios ofrecidos por el licitador agraciado garantiza la continuidad de los proyectos municipales y sirve el mejor interés público.

En su escrito, Super Asphalt arguye que fue nunca fue notificado de incumplimiento alguno de su parte con los requisitos necesarios para llevar a cabo la encomienda de la subasta, ni que carecía de los recursos suficientes para llevarla a cabo a su totalidad. Sostiene que no hay controversia que fue el postor más bajo, por lo que no existía obstáculo alguno para que la subasta le fuera adjudicada.

De otro lado, aduce que los fundamentos utilizados en su contra por la Junta de Subastas, relacionados a un historial de

incumplimientos en contratos previos con el Municipio y de atrasos ocurridos entre el 2022-2023, fueron errados y que éstos no le pueden ser atribuidos. Lo anterior, toda vez que, desde el 2024, sus operaciones se efectúan por nuevos dueños. En particular, detalla que fue sujeto de una adquisición por parte de su acreedor principal. Razona que la subasta objeto de este contrato es la primera del Municipio Autónomo de Guaynabo en la cual la nueva administración de Super Asphalt participa, por lo que no es correcto imputarle los antecedentes de incumplimientos de los pasados dueños y administradores.

Así, es la contención de Super Asphalt que, la Junta de Subastas y el Municipio, al dejarse llevar por las actuaciones y las impresiones que alegadamente dejó su administración predecesora, optaron por aceptar una licitación más cara e ignorar los principios de eficiencia, honestidad y corrección que deben dirigir sus actuaciones para proteger los intereses y el dinero del pueblo al que representa.

De otra parte, la Junta de Subastas y el Municipio aducen que, en el interés de proteger los fondos públicos, tenían una obligación, legal y moral, de descartar a Super Asphalt y no adjudicarle a éste la *buena pro*. Precisan que Super Asphalt no tiene un historial de cumplimiento satisfactorio, ni cuenta con la organización, ni la experiencia, ni los controles operacionales, ni las destrezas técnicas necesarias para cumplir sus obligaciones. Resaltan que, si bien el precio más económico es un elemento fundamental a la hora de adjudicar una subasta, el récord de Super Asphalt demostró lo poco confiable de sus servicios; todo ello en detrimento del interés público.

En cuanto a la alegación de Super Asphalt de que no se debió denegar su oferta a base de experiencias previas que sucedieron bajo

dueños y administradores anteriores, la Junta de Subastas y el Municipio coligen que la alegada venta de activos de capital no tiene ningún efecto en la estructura de los directores y oficiales de la corporación. Puntualizan que, de todos modos, e independientemente de todo lo anterior, la Junta podía descartar la oferta de Super Asphalt tomando en consideración el historial evidenciado de incumplimiento de dicha compañía en trabajos dirigidos a la adquisición de hormigón asfáltico tipo S-1, B-1 y V-B, entregado, regado y compactado, precisamente como los de la subasta de referencia.

Por su parte, la licitadora agraciada, Puerto Rico Asphalt, razona que el Municipio Autónomo de Guaynabo actuó cónsono con y dentro del mandato de Ley que le exige proteger los mejores intereses del ayuntamiento y del manejo de los fondos públicos que administra. Arguye que Super Asphalt pretende que este Tribunal solo tome en consideración que cumplió con los requisitos de la subasta y fue el menor postor, aun cuando su récord no está respaldado por un buen historial.

A su vez, Puerto Rico Asphalt añade que Super Asphalt es una sola entidad jurídica, la cual fue organizada bajo una estructura corporativa que le otorga personalidad jurídica independiente de sus dueños. En esa dirección, pormenoriza que en la presente causa no ha habido ningún cambio en el licitador, toda vez que Super Asphalt es la misma persona jurídica que incumplió en la subasta del año fiscal 2022-2023. Ante ello, es su parecer que la Junta de Subastas no erró al tomar en consideración el informe de la ingeniera Ortiz Morales para determinar que descartaría la propuesta de Super Asphalt en la Subasta 26-F-34 como consecuencia de su historial de incumplimientos.

Analizado el expediente ante nuestra consideración, procede confirmar la determinación recurrida. Del récord surge que la

decisión de otorgarle la *buena pro* a Puerto Rico Asphalt fue debidamente evaluada y fundamentada. Esta se cimentó en un análisis de las recomendaciones de la directora del Departamento de Obras Públicas del Municipio Autónomo de Guaynabo y un detenido examen efectuado por los miembros de la Junta de Subastas. Así, es claro que no se laceró el procedimiento equitativo de la subasta, ni mucho menos se creó un favoritismo hacia el licitador agraciado. La Junta de Subastas advirtió con claridad las razones por las cuales descartó la oferta de Super Asphalt, a pesar de que fue el postor más bajo. Resulta evidente que Super Asphalt tiene un historial de incumplimiento que, de otorgarle la *buena pro*, se podría razonablemente concluir que se afectaría la continuidad de los proyectos municipales y representaría un riesgo operacional.[4]

Recordemos que nuestro ordenamiento jurídico le reconoce discreción a la Junta de Subastas al momento de emitir una adjudicación. Dicho ente es el que tiene la responsabilidad de justipreciar las propuestas y adjudicar la subasta. Según expuesto, la falta de habilidad del postor para realizar y cumplir con el contrato y su reputación e integridad comercial, entre otras cosas, permite que la Junta de Subastas descarte una propuesta a pesar de ser la más económica. Así, la Junta determinó, a base del récord administrativo y la discreción que ostenta, que Super Asphalt no era un licitador responsable.

A raíz de lo anterior, concluimos que la decisión recurrida no es arbitraria, ilegal o irrazonable. Puerto Rico Asphalt fue el licitador que cumplió con todas las especificaciones de la subasta y su oferta responde a salvaguardar el mejor interés público.

---

[4] De hecho, la Junta de Subastas destacó que, mediante *Sentencia* de este Tribunal de Apelaciones de 27 de septiembre de 2023, en el caso KLRA202300367, se confirmó una decisión administrativa del Municipio Autónomo de Guaynabo de adjudicar la *buena pro* de una subasta al segundo menor postor y no al menor postor (Super Asphalt) precisamente por el historial de incumplimiento.

En suma, el recurso de autos carece de argumentos sólidos y evidencia que nos mueva a intervenir con la discreción del foro recurrido. Como es sabido, quien impugne un dictamen de un organismo administrativo tiene el peso de la prueba por esta presumirse correcta. Consecuentemente, para poder prevalecer dicha parte tiene el deber insoslayable de presentar evidencia suficiente para derrotar la presunción que estas poseen. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

**IV.**

Por los fundamentos antes expuestos, confirmamos la adjudicación de la subasta núm. 26-F-034 al licitador Puerto Rico Asphalt.

Lo acordó el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones